UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EMMANUEL CABALLERO,<br><br>　　　Plaintiff<br><br>v.<br><br>ROMEO ARANAS, et. al.,<br><br>　　　Defendants | Case No.: 3:19-cv-00079-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 124 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Summary Judgment. (ECF No. 124.) Defendants filed a response (ECF No. 165), and Plaintiff filed a reply (ECF No. 172).

After a thorough review, it is recommended that Plaintiff's motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (First Amended Complaint (FAC), ECF No. 107.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) The court screened the FAC, and allowed Plaintiff to proceed with an Eighth Amendment claim for deliberate indifference to his serious dental needs against the Estate of Gene Hing Yup (substituted in for Dr. Yup after he passed away), Melissa Mitchell, Dr. Mardelle Peterson[1], Dr. Benson, Jennifer Vargas, and

---

[1] Plaintiff has filed a motion to substitute the Estate of Mardelle Peterson for defendant

Summer Jacobsen. (*See* ECF Nos. 74, 106.) Dr. Benson has been dismissed. (ECF No. 150.) To date, Summer Jacobsen has not been served, and District Judge Du has issued a notice of intent to dismiss Jacobsen on June 17, 2021, if a proof of service is not filed or good cause is shown as to why services has not been timely made. (ECF No. 176.)

Plaintiff moves for summary judgment with respect to his Eighth Amendment claim against the Estate of Gene Hing Yup, Dr. Peterson and Jennifer Vargas (but not Nurse Mitchell), but only with respect to their conduct between 2015 and 2017. (*See* ECF No. 124[2], 150.)

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

---

Dr. Peterson under Federal Rule of Civil Procedure 25, which will be ruled on after the motion is fully briefed. (ECF No. 180.)

[2] Plaintiff also mentions Jacobsen in his motion (*see* ECF No. 124 at 10:25); however, Jacobsen has not yet been served.

F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Eighth Amendment Standard**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698

F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

5

1. Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

**B. Analysis**

Plaintiff claims that NNCC's dental department was made aware that Plaintiff had 13 cavities at his exam on March 17, 2015; however, no dental work was performed on any cavities until 2018 despite sending multiple kites asking for treatment. (Pl. Decl., ECF No. 124 at 35-36.)

Plaintiff argues that NNCC's dental department knew he had a cavity on tooth 15 (his left upper molar), in March of 2015, but he did not receive any treatment on this tooth until June of 2020, after he filed his motion for preliminary injunction in this case.

In addition, he asserts that tooth 19 was in good condition in March of 2015, but his filling fell out of that tooth in December 2016. Plaintiff says that Dr. Peterson was made aware of the filling falling out, and she said she would restore the tooth, but failed to do so. Plaintiff states that he told Dr. Peterson at his December 2018 appointment that tooth 19 had deteriorated to the point of needing a root canal. (ECF No. 124 at 38.) He claims that Dr. Peterson said that they could fill the filling next to tooth 19 (that also fell out), and hopefully not have to extract the tooth. He further asserts that she told him if he were not in prison, she would have performed a root canal. (ECF No. 124 at 38.) Plaintiff contends that a root canal could have been performed, but Defendants refused, and the tooth eventually had to be extracted in April of 2019. Plaintiff acknowledges that when he saw Dr. Peterson on October 24, 2018, he told her that he did not want to lose his tooth because he was pursuing civil litigation. Plaintiff claims Dr. Peterson told

him that NDOC did not let them perform root canals. He says that he and Dr. Peterson agreed that if Dr. Yup had just refilled the filling that had fallen out of tooth 19 back in 2016, the decay would not have taken over the tooth and he would not have needed a root canal. (ECF No. 124 at 39.)

Next, Plaintiff asserts that Dr. Yup destroyed teeth 8, 9 and 10, when he performed fillings on them.

Finally, Plaintiff further claims that his teeth had plaque buildup and required cleaning, but this also was not done and Plaintiff was told there was no dental hygienist to clean his teeth, and as a result his enamel and gums were damaged and he had rapid decay of teeth 4, 5, 6, 7, 8, 9, 11, 12, 13, 15, 18, 23, 27, 29, and 32. He asserts that he had receding gums on his upper right teeth (teeth 1-8) because they needed a deep scaling/cleaning, but this was not done.

Preliminarily, Defendants are correct that Plaintiff's motion does not cite the particular evidence on which he relies to support the facts he claims are undisputed, as is required by Local Rule 56-1.

Insofar as Plaintiff claims that Dr. Yup performed unsatisfactory treatment with respect to teeth 8, 9 and 10, Plaintiff does not point to any *evidence* to support his claim that the fillings on these teeth were deficient.

In addition, to the extent Plaintiff claims his enamel and gums were damaged and he suffered rapid decay in his other teeth, Plaintiff does not cite any *evidence* to support this claim.

Next, the court also agrees with Defendants that Plaintiff has not met his burden of showing that Vargas was deliberately indifferent to his serious dental needs. In fact, the motion does not mention Vargas or state what conduct she engaged in that violates his rights under the Eighth Amendment. In his reply brief, Plaintiff states that Vargas admits she was responsible for

scheduling dental appointments, and that she responded to over 17 dental requests from Plaintiff between 2016 and 2019; however, none of this information was contained in Plaintiff's motion so that Defendants would have a chance to respond to such arguments. Since Plaintiff has not met his burden with respect to Vargas, his motion should be denied as to her.

The court will now address Plaintiff's remaining argument against Dr. Yup (via his estate). Plaintiff states that Dr. Yup refused to treat Plaintiff's cavities and refused to refill a cavity after the filling fell out, and gave him nothing for his pain, and allowed Plaintiff's teeth to further decay. Plaintiff claims it is Dr. Yup's policy to only extract and not to save teeth.

Plaintiff does not cite to any evidence to support his allegations against Dr. Yup. It is unclear from the evidence he does submit that Dr. Yup performed the examination Plaintiff references on March 17, 2015, or that Dr. Yup was the recipient of any of the kites Plaintiff sent between 2015 and 2017. Plaintiff does not even present evidence to establish that Dr. Yup was one of the institutional dentists during this time period. Moreover, it is not clear from the dental records submitted by Defendants that Plaintiff ever saw Dr. Yup between 2015 and 2017. Plaintiff claims that Dr. Yup failed to refill the filling that fell out of tooth 19, but he does not cite evidence to support this assertion. Again, Plaintiff's motion also mentions that Dr. Yup "butchered" or destroyed teeth 8, 9, and 10, but his reply brief acknowledges this purportedly occurred in February of 2018, and his motion is only with respect to conduct between 2015 and 2017.

Plaintiff says that April 26, 2017, Dr. Yup and dental assistant Jacobson wanted to pull his tooth, but would not fill tooth 19; however, the records appear to show that Plaintiff saw

Dr. Peterson on April 26, 2017, for re-evaluation of tooth 19, and also reported sensitivity in teeth 8 and 9 at that time. (ECF No. 167-1 at 12.) Plaintiff cites no evidence to support this claim against Dr. Yup.

Therefore, Plaintiff has not met his burden of demonstrating he is entitled to summary judgment with respect to Dr. Yup's estate, and his motion for summary judgment should be denied as such.

Finally, the court will address Plaintiff's arguments with respect to Dr. Peterson. Plaintiff claims that NNCC dental was aware Plaintiff had 13 or more cavities in March of 2015, but no work was performed on these teeth until 2018. Plaintiff makes specific reference to tooth 15, tooth 19, and also claims his teeth were not cleaned during this time period, which resulted in further decay of his teeth, gingivitis and issues with his enamel. Plaintiff asserts that Dr. Peterson said she would restore tooth 19, but failed to do so and three years later it had to be extracted. Plaintiff also claims Dr. Peterson was informed of his extreme pain in his right upper molar (tooth 15), but did nothing. Plaintiff further contends that Dr. Peterson informed Plaintiff he had receding gums on his upper right teeth (1-8), but no work was done for this issue.

Plaintiff's dental classification and restrictions form from May 17, 2015, indicated that Plaintiff needed further non-urgent dental care. (ECF No. 124 at 43.) At that time, his dental examination showed he did not have teeth 1, 14, 16, 17, 30 or 32. (*Id*. at 44.) It also revealed he had issues with teeth 4 (MOD), 5 (MOD), 8 (ML), 9 (DL), 12 (DO), 13 (MOD), 15 (OC), 18 (OB), 20 (DO), 29 (MOD), and 31 (OB).[3] (ECF No. 124 at 44.) As Plaintiff points out, nothing is noted with respect to tooth 19 at that time. (*Id*.)

---

[3] In dentistry, "B" refers to buccal, which is the area of the tooth close to the cheek; "D" is distal or the surface of the tooth most distant from the median line of the arch (back);  "L" is lingual or the surface of the tooth directed toward the tongue; "M" is mesial, the surface of the tooth nearer

Plaintiff sent a kite on May 7, 2016, stating that he needed a deep scaling/cleaning because his teeth had a bunch of plaque buildup and they hurt. In response he was told he was placed on the urgent care dental list. (ECF No. 124 at 50.)

Plaintiff was seen the following month, on June 30, 2016, regarding his request for deep scaling/cleaning. The progress note states that Plaintiff was scheduled for "TA scaling" request, and Plaintiff was advised he was on the cleaning list. Dr. Peterson said that Plaintiff was to return for "prophyl," presumably referring to prophylaxis[4]. (ECF No. 167-1 at 12.)

Plaintiff sent another kite on October 12, 2016, stating that he had a cavity in his left upper molar and was in extreme pain, and he believed it went all the way to the root. He was told he was placed on the urgent care dental list. (ECF No. 124 at 51.)

Plaintiff was seen on December 19, 2016, for his complaints of a toothache. Imaging was taken and it was noted that tooth 19 was symptomatic. Plaintiff also reported sensitivity throughout his mouth, and Dr. Peterson explained to him that he had receding gingivitis. She gave Plaintiff an oral hygiene handout, and Plaintiff was to return for desensitizing and then restoration or extraction of tooth 19. (ECF No. 167-1 at 12.) Plaintiff did not show up for his desensitization appointments on January 4, 2017 and January 19, 2017. (ECF No. 167-1 at 12.)

Plaintiff sent a kite on February 15, 2017, stating that he had multiple cavities and had been kiting to get them filled for over a year, and he felt they were getting worse and his teeth hurt. In response he was told that he "no-showed" for two appointments (January 4, 2017 and

---

the center of the dental arch (front); "O" is occlusal, the biting surface of premolar or molar teeth. *See* https://www.ada.org/en/publications/cdt/glossary-of-dental-clinical-and-administrative-terms, last visited June 10, 2021.

[4] This refers to the removal of plaque, calculus, and stains from tooth structures. *See* https://www.ada.org/en/publications/cdt/glossary-of-dental-clinical-and-administrative-terms#o, last visited June14, 2021.

January 19, 2017), and was removed from the list, but he would be added to the list from the date of the kite. (ECF No. 124 at 52.)

Plaintiff was seen on April 3, 2017, for desensitization on teeth 18 and 19. He was to return for restoration or extraction of tooth 19, as well as an x-ray of teeth 8 and 9. Plaintiff was given Sensodyne for sensitivity of teeth 19, 8 and 9. (ECF No. 167-1 at 12.)

Plaintiff did not show up for his appointment on April 12, 2017. (ECF No. 167-1 at 12.)

Plaintiff was seen for re-evaluation of tooth 19 on April 26, 2017. He reported sensitivity of teeth 8 and 9. Imaging was taken of teeth 8, 9 and 19. Plaintiff indicated he did not want tooth 19 extracted. Plaintiff was to return for treatment of teeth 8 and 9 and possible restorations. He was given an oral rinse. Plaintiff also signed a form refusing the extraction of tooth 19 on April 26, 2017. (ECF No. 124 at 63; ECF No. 167-1 at 12.)

Plaintiff returned for more imaging on April 28, 2017, and it was noted there were various lesions on tooth 19, but he indicated he did not want treatment on tooth 19. Plaintiff was to return for restoration of teeth 29, 8 and 10, and re-evaluation of tooth 19. He was given oral rinse and oral hygiene instructions. (ECF No. 167-1 at 12.)

Plaintiff sent another kite on November 16, 2017, asking whether they would be able to fill the four cavities. He was told he was on the NNCC dental list, and that appointments were scheduled according to the date on which the first kite is received. (ECF No. 124 at 53.)

Plaintiff was seen on February 26, 2018 and received treatment for teeth 8 and 10, though the notes are mostly illegible, and this is outside of the 2015-2017 period that is the subject of Plaintiff's motion.

  Plaintiff's dental classification form for May 17, 2018 noted issues with teeth: 2(ML), 6(M), 10 (DL), 15 (M), 19 (RR), 27 (F), and 29 (MOD). The treatment plan listed teeth 2, 10, 6, 15, 29 and 27. (ECF No. 124 at 45.)

  Again, Plaintiff does not cite to any specific evidence to support his statement of facts. Plaintiff's evidence contains his kites to dental over the years and his declaration, but none of the kites show they were sent to or received by Dr. Peterson.

  Plaintiff's declaration contains generalized statements and conclusions that he had multiple issues with his teeth, but none of them were worked on, but no specific statements about the conduct of Dr. Peterson that he claims violated his rights. (ECF No 124 at 34-36.) In addition, in his declaration, Plaintiff claims the "no shows" were forged, without explaining how this is the case or citing any supporting evidence.

  Plaintiff provides affidavits from numerous inmates regarding *their* claims of inadequate dental care (*See* ECF No. 124 at 15- 33); however, these are not relevant to whether *the Defendants in this case* were deliberately indifferent to *Plaintiff's* serious dental needs.

  Plaintiff also states in his declaration that after he filled out a second level grievance, the Defendants began to retaliate against him (ECF No. 124 at 34); however, he was not allowed to proceed with a retaliation claim in this action.

  Plaintiff's declaration contains multiple statements about defendant Nurse Mitchell (*see* ECF No. 124 at 35, 37-38), but he has clarified that he is not moving for summary judgment against Mitchell.

  Plaintiff's dental records, submitted by Defendants, create a genuine dispute of material fact as to whether Dr. Peterson was deliberately indifferent to Plaintiff's serious dental needs. While Plaintiff claims that no treatment was provided for his dental issues, the dental records

reflect that Plaintiff was seen within a reasonable time after he sent kites, and that he failed to show up for several scheduled appointments. He was given desensitization treatment, Sensodyne as well as oral rinse. Dr. Peterson ultimately recommended extraction of tooth 19, which Plaintiff refused. Dr. Peterson also instructed Plaintiff to return for restoration and treatment of several other teeth.

While Plaintiff may disagree with the decision to extract tooth 19, he does not present evidence that restoration was a feasible option, or that extraction, instead of restoration, was medically unacceptable under the circumstances.

Finally, while Plaintiff claims that the alleged failure to provide him care between 2015 and 2017 caused further decay, gingivitis, and loss of enamel, he does not cite evidence to support these conclusions. In fact, his dental records show that Dr. Peterson advised him back in December of 2016 that he had receding gingivitis.

For these reasons, Plaintiff's motion for summary judgment should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for summary judgment (ECF No. 124).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 14, 2021

_____
William G. Cobb
United States Magistrate Judge